# CASES

IN THE

# APPELLATE COURTS OF ILLINOIS.

## FIRST DISTRICT—OCTOBER TERM, 1895.

### Lizzie D. Cottier v. People of the State of Illinois.

1. DIVORCE PROCEEDINGS—*Custody of Children.*—In proceedings for divorce, the court may, on application of either party, make such order concerning the custody and care of the minor children of the parties during the pendency of the suit as may be deemed expedient, and for the benefit of the children.

2. CONTEMPT OF COURT—*Refusal to Disclose the Whereabouts of a Child.*—Where a husband filed a bill for divorce, asking for the custody of a child which was concealed from him by the defendant, and the defendant answered the bill and filed a cross-bill, asking for a divorce, also asking for the custody of the child, together with a sufficient sum for its maintenance, alimony, etc., *it was held* that the custody of the child was thus made a subject-matter for adjudication by the court, and that the defendant was guilty of contempt of court in refusing to disclose the whereabouts and condition of the child.

3. CUSTODY OF CHILDREN—*When Courts Will Take it from the Mother.*—It is not the custom of courts of equity to decree the custody of a female child of tender years to be taken from its mother, unless she is shown to be unfit to be trusted with its care.

Contempt of Court.—Appeal from the Superior Court of Cook County; the Hon. JOHN BARTON PAYNE, Judge, presiding. Heard in this court at the October term, 1895. Affirmed. Opinion filed December 2, 1895.

### STATEMENT OF THE CASE.

These proceedings grew out of a divorce case in which appellant was defendant, and Alonzo E. Cottier complainant.

On April 5, 1895, complainant filed his bill in the Supe-
rior Court of Cook County against appellant, praying for a
divorce, alleging that on November 29, 1884, appellant will-
fully and without reasonable cause deserted complainant,
and has ever since absented herself from him, and also
praying for the custody of a female child, Florence, about
thirteen years of age, whom complainant has not seen since
the child was about eight months old, and whose present
whereabouts he does not know.

On May 7, 1895, appellant appeared, filed her answer to
said bill, denying that on said November 29, 1884, or at any
other time, she willfully and without reasonable cause de-
serted the complainant. At the time of the proceedings
now under consideration, a replication to said answer had
not been filed by complainant, nor had any hearing upon
the merits been had. At the time of filing her answer, ap-
pellant also filed a cross-bill, praying for a divorce from
said Alonzo E. Cottier on the ground of extreme and re-
peated cruelty, stating therein numerous specific acts of
cruelty both to herself and said child; also stating that be-
cause of said cruelty, and because appellant was in constant
fear that complainant would inflict bodily harm upon her
and said child, on February 16, 1883, she left complainant's
home, taking said child with her, and has never since re-
turned to said home, nor has she at any time been requested
by complainant so to do. The cross-bill also prays that
said Alonzo E. Cottier may answer cross-bill; that she may
be divorced from him; that she be awarded the care, custody
and education of the said child, Florence; that cross-com-
plainant may be granted the household furniture and prop-
erty of the said Alonzo E. Cottier and such sums of money
from him as the court may deem necessary and proper for
the maintenance of cross-complainant and said child, and
that the said Alonzo E. Cottier may be required to pay cross-
complainant a sufficient sum of money to enable her to em-
ploy counsel and carry on this suit, and for the support of
herself and said child during the pendency thereof; that she
may have such other and further relief, etc.

On June 4th complainant filed his answer to said cross-bill, denying the charges of extreme and repeated cruelty, to which answer appellant filed a replication on June 15th. On June 17th appellant filed her petition for temporary alimony and solicitor's fees, accompanied by certain affidavits in corroboration of her charges of extreme and repeated cruelty, and set forth that complainant was a man of wealth, had formerly resided in the city of Buffalo, and had large property interests there.

On June 3d complainant filed a petition alleging that he has not seen said child since February 16, 1883, when appellant left his home taking said child with her, and that since said date appellant has secreted said child, and complainant has been unable to learn where said child is, and praying that appellant might be required to produce said child, furnish satisfactory evidence that it is the child appellant took from complainant's home, and that said child be placed in the custody of some suitable person or institution, to be cared for, subject to the orders of the court.

To this petition appellant filed a demurrer on June 15th, which demurrer, on June 17th, was overruled, and appellant ordered to answer said petition within five days. At the time that this last order was entered, appellant's petition for temporary alimony and solicitor's fees was heard, but the court refused to make any order as to alimony, etc., until appellant had filed her answer to said petition.

On June 22d appellant filed her sworn answer to said petition, admitting that on February 16, 1883, she left complainant's home, taking said child, but denying all the other allegations of the petition, except that she has refused to inform complainant where said child is, and alleging that she has made such refusal because she believes that the giving of said information would not be for the best interests and safety of said child; would cause it to suffer both mentally and physically, and would endanger its life. The answer then states that she left said complainant's home, taking said child with her, because of the extreme and repeated cruelty, both to her and said child, and because she

was in constant fear that complainant would inflict bodily harm upon her and said child. The answer then details at length the alleged acts of cruelty, both to appellant and said child, which, it is said, occurred prior to said February 16, 1883, and which appellant says caused her to take the step she did on said date. The answer further states that on said February 16, 1883, appellant met a lady friend—an intimate acquaintance—who was accompanied by her husband, told her her story, and that she was fearful of said child's life, and wanted to get it away from her husband, but was doubtful if she could properly support it; that as a result of the interview said lady friend took said child and agreed to protect it and educate it, and did take it, and has since had the custody of it; that appellant, after giving away said child, went to a police station in the city of Buffalo at about eleven o'clock at night for the purpose of seeking shelter; that she had no money to go anywhere, and her relatives were away, and while at said police station, with a view of preventing the husband regaining the child's custody, she accused herself of having chloroformed said child and dropped it into the Niagara river; that she was subsequently, on February 22, 1883, at the instigation of her husband, incarcerated in the Buffalo State Asylum for twenty-one months, during all of which time she was not insane; that shortly after her incarceration, and after sufficient time, in her judgment, had elapsed so that all possible trace of her child's whereabouts had been lost to the husband, she informed the authorities of the asylum, the husband, and other parties, that the child was not dead, but had been given to friends whose names she had agreed not to make known, and has since maintained that such was the true state of facts; that at the time she gave said child to said lady friend it was agreed that there should be no communication between them for the space of a year unless something serious was the matter with the child; that this agreement was made to prevent any possible trace of the child coming to the husband; that she believes said child is now in the custody of said lady friend and husband; that said child has been

Cottier v. The People.

brought up with the understanding and now thinks that said lady friend and husband are respectively her mother and her father; that appellant has seen said child since said February 16th only three different times, once when the child was about three years old, again when she was five years old, and again when she was about eleven years old; that on all said three occasions said child was accompanied by said lady friend and her said husband, and appeared well-bred, well dressed, and in a thoroughly good condition, mentally and physically; that there appeared to be the warmest affection existing between said child and said lady friend and husband; that the custodians of said child are persons in easy circumstances financially; that they have an income of at least $5,000 a year; that all they have is shared with said child; that the child is receiving a good education; that the people in whose custody she is are people of culture and refinement; that the child's domestic surroundings are such as are conducive to happiness and contentment; that said child is of a sensitive nature; has developed a love for books and learning, and has been so brought up as to have little knowledge of the trials and tribulations of the world; that on the occasion of the last interview with said lady friend and said child two years ago, it was agreed that said lady friend should not visit appellant, and should not communicate with her, unless the child was seriously ill or was dead; that this agreement was made at a great personal sacrifice to appellant, solely for the child's good and to prevent complainant getting any possible trace of the child; that appellant has not seen said lady friend or said child since the interview two years ago, neither has she heard from her; that she believes said child is alive and well, and in the custody of said lady friend; that if anything serious had happened to the child she believes said lady friend, under the agreement, would have communicated with her; and that said lady friend knows appellant's address and could communicate with her.

The answer then speaks of several visits of complainant to appellant while she was incarcerated in said asylum, and

alleges acts of cruelty as then inflicted upon her by complainant; alleges that complainant tried to get the information from her as to said child's whereabouts, and upon her refusal, and because of her refusal to give such information, kept her incarcerated in said asylum for twenty-one months, when she was not insane, and when complainant knew she was not insane. That complainant did not want the possession of the child because of any affection for the child (on the contrary, he absolutely dislikes said child), but because, if he had possession of the child, he knew, because of appellant's great love for the child, he could dictate terms of settlement to appellant in case any subsequent proceedings for a divorce, on the ground of cruelty, were commenced by appellant.

The answer further states that since appellant's release complainant has called on her twice at her place of business in New York City; that he has not at any time asked her to return and live with him again; that until July, 1893, he lived in the city of Buffalo; has amassed a large fortune; is worth at least $250,000, and has an annual income of at least $15,000; but at no time has he contributed one cent, either to appellant's support or the support of the child; nor has he, at any time prior to the filing of his bill, offered so to do; that he has, on several occasions, expressed a dislike of said child, and that he was glad to be rid of the responsibility of said child's support and training; that subsequent to appellant's release from said asylum, and up to July, 1893, both parties, for the most of the time, resided within the State of New York, and that the courts of the State of New York were open to complainant for the obtaining of such relief regarding the child as he was entitled to, but never once has complainant taken any proceedings to obtain the custody of said child; that in July, 1893, complainant left Buffalo and took up a residence in the city of Chicago, for the express purpose of filing his bill, and it is his intention, at the conclusion of the litigation here, to return to Buffalo; that he is not engaged in any permanent business in Chicago.

The answer further states that appellant believes that if

Cottier v. The People.

complainant was informed of the whereabouts of said child and of the people in whose custody she is, he would immediately proceed to harass said child and render her life miserable, and also harass and annoy said people, and that if the court should order appellant to tell him of the whereabouts of said child, but upon the express condition that he would not molest said child or harass or annoy her, he would immediately proceed to disobey said condition, would go out of the jurisdiction of said court, would not return, and said court would have no further control over him and great injury and unhappiness would result to said child; that she believes from what she knows of said child's sensitive nature, the domestic life in which she lives, the affection said child has for said lady friend and said husband, and from her knowledge of the child's belief that said lady friend and husband are respectively her mother and her father, and does not know appellant except as a friend, and the complainant not at all, that, to take said child from the pleasant surroundings in which she is now placed and put her here in Chicago with some fit person or charitable institution, would be such a great shock to her at her present age in life, to wit, thirteen years, as would not only endanger her health and future happiness, but probably her life; that appellant in all her acts and doings has been actuated solely and wholly by her love and motherly affection for said child, and by a desire for the child's welfare, safety and happiness.

On July 3, 1895, complainant's petition for the production of the child came up for hearing upon said petition and appellant's answer thereto; and upon the affidavits set out in the abstract, and upon the reading of appellant's answer, the court said that if the facts in said petition were true, appellant would be entitled to a divorce, the custody of the child and the protection of the court; that all the parties have rights—the complainant, the defendant and the child; that the child can not for a moment be made the football of this controversy, but that at the threshold of this case it must be known that there is a child, and ruled that appellant

would be required to disclose the whereabouts of the child, and that she might have an injunction against the complainant to prevent his communication with the child until the case could be heard.

In response to said order of the court, appellant filed on June 5th her answer to said rule directing her to disclose the whereabouts of said child, and, objecting to the rule, said that she could not disclose the whereabouts of said child, because she did not know the same; but that she knew, however, the names of the custodians of the child, and disclaiming any discourtesy to the court, and with due respect for the wishes of the court, declined, for the reasons stated in her said answer at length, to place upon the records of the court the names of said present custodians.

Upon reading of said answer, the court, on July 5th, entered an order of record that the defendant appear at ten o'clock in the forenoon of July 6th, and disclose the present whereabouts of said child, and also give the names of the persons with whom said child was left by said defendant, the name of the place or places where they then resided and now reside, and where and how the said child could be found, or her whereabouts learned, or show cause, if any she can, why she should not do so.

Appellant at the time mentioned, on Saturday, July 6th, filed her sworn answer to said order, saying that she could not disclose the whereabouts of said child, or give the name of the place or places where the custodians of the child resided or now reside, because she did not know, and declining to give the name of the persons with whom said child was left by her, and where and how the said child could be found or her whereabouts learned, for the reasons stated in said answer, which reasons are in substance as follows:

1.   That this court has not at this time and under the pleadings, affidavits, petitions, answers and other matters appearing in the records of this case, and the facts disclosed therein, the right or power to require her to disclose the information specified in said order.

2.   The best interests of the child do not require that the

information sought for should be given at the present time, for reasons set forth in the answer of this defendant to the original bill, and in her cross-bill, and in her answer to the petition that she produce said child, and in her answer to the verbal order of the court that she disclose its whereabouts, and in her petition for alimony and solicitor's fees *pendente lite,* filed herein, all of which pleadings and answers and petitions this respondent makes a part of this answer.

3. This respondent can not now disclose the present whereabouts of said child, Florence Cottier, because she does not know its present whereabouts.

4. This respondent can not disclose the name of the place and places where the custodians of said child resided when said child was given them, or where they now reside, because she does not know where they then resided or where they now reside.

5. This respondent can not state where and how the said Florence Cottier can be found, because she does not know how and where she can now be found.

6. This respondent, further answering, states that she declines to give the names of the persons with whom said child was left, or where and how her whereabouts can be learned; because it has not yet been determined that either party to this cause shall have a divorce, and because it has not yet been determined, if either party obtains a divorce, that he or she shall have the custody of said child; and your respondent states that if it should be finally determined upon the full hearing of this cause that neither party hereto shall have a divorce, or that neither party hereto shall have the right or custody of said child, then the information sought for in this order would be useless to the court and would subject said child to probable annoyance and harm, and cause her both physical and mental injury.

7. Respondent further shows that the information sought for should not be given because no order should be entered affecting the welfare of said child, or which would probably bring knowledge of this proceeding to her if this information be disclosed (as this respondent believes it will),

until a final hearing is had upon the main issues in this cause.

8. This respondent further shows that such information should not at present be given because this court is powerless to prevent the knowledge of such information being brought to said child by persons not parties to this cause, or by the parties hereto, and this respondent says that such knowledge would be injurious both mentally and physically to said child, and such information should not be required to be spread upon the records of this court, until the court shall at least inquire more fully into the rights of the parties hereto, the custodians of said child, and of the child itself, than the court has been able to do upon this preliminary motion.

9. This respondent further says that both parties hereto have resided in the State of New York for the past twelve years, and that the laws of said State, if invoked, would have fully protected petitioner's rights as to the custody of said child, or as to the information sought for herein, had he been entitled thereto; but respondent says that during all that time said petitioner did not invoke the aid of the courts of New York, and respondent charges that said petitioner is now invoking the aid of a court of a foreign State, for the purpose of annoying and harassing your respondent and the said child.

This respondent now having fully answered said rule, and for the reasons appearing in the foregoing answer and in the papers referred to therein, and for manifold other reasons, and disclaiming any discourtesy to the court, and resting upon her lawful and equitable rights, respectfully asks to be discharged from said rule and from further answer to the same, which was signed and sworn to by said defendant. The following order was made: Whereupon the following order of the court was entered of record July 8, 1895. Order entitled "People of the State of Illinois v. Lizzie D. Cottier." Order recites the entry of the order of July 5th, in the case of Cottier v. Cottier, above set forth, directing the defendant to disclose the present whereabouts of said child,

etc., and further recites that on said July 6, 1895, said defendant filed her written answer to said order, declining to comply with the provisions of the same, and further recites that on said July 6, 1895, the court entered an order, that because it appeared to the court that said defendant has refused to comply with the order of July 5, 1895, it is ordered that said rule be made absolute, and that an attachment for the said defendant be issued, returnable forthwith, and further recites that said defendant being present in court and represented by counsel, an attachment was issued, returnable forthwith, and the said defendant being in open court was, upon request of the court, duly sworn and examined in open court by the court, and the said defendant, among other things made answer to interrogatories put by the court as follows:

Q. What are the names of the persons in whose custody you understand the child to be?

To which no answer was given.

Q. What is the name of the gentleman to whom you gave the child? A. Well, without meaning the least disrespect to the court, and after considering the matter, I think it my duty to my child to decline to answer the question.

Q. Why do you think that, Mrs. Cottier? A. Because I feel very sure that placing any information that will lead to her whereabouts being known on the records of the court will jeopardize her safety and happiness.

Q. Will you tell me in what respect? I have wondered as a man, why you felt that way and why you thought so? A. Because I think it would be, under all the circumstances, and at this stage of the proceedings, a direct detriment to her to have her father know.

Q. Is Jones the name of the person where she is supposed to be? Look me in the face. A. Giving the same reasons that I did before, I decline to answer the question.

Q. Don't you think you had better take until to-morrow morning to think this over, Mrs. Cottier, before I commit you? A. I have been thinking it over for twelve years. I don't think it will make any difference.

Q. You decline, then, to state the name of the woman and the man to whom you gave the child, and where you understand she now is? A. Yes, your Honor.

Q. You decline to give their place of residence? A. I am not able to do so.

Q. You decline to give the means of communication which you have? A. Yes, your Honor.

Q. My question is, do you mean to state here that you have no way, directly or indirectly, present or remote, by which you can communicate with Florence, or with the persons in whose custody you understand her to be? A. No, I do not say that.

Q. Are you prepared to give the court such information as you have on that subject? A. No, I am not.

Q. Do you decline to do it? A. Yes, sir.

That said defendant refused and declined to give the information asked by the court, and it further appearing that the said Lizzie D. Cottier has been guilty of contempt of this court in refusing to comply with the order of this court entered July 5, 1895, and in declining to give the information asked of her by the court in the interrogatories put to her in open court, it is ordered that the said Lizzie D. Cottier be committed to the custody of the sheriff of Cook county for a period of six months, unless she shall sooner comply with the order of this court of July 5, 1895, and shall disclose the whereabouts of the child, Florence, and answer the said interrogatories put to her by the court, and which she has declined to do, or until discharged by due process of law, and that a mittimus do issue therefor.

To the entry of which order defendant objected and excepted, and prayed an appeal to the Appellate Court of the First District, which was allowed upon the filing of a bond in the sum of $2,500, conditioned that said defendant should prosecute her appeal with effect, and in case judgment should be affirmed, immediately surrender her body to the sheriff of Cook county.

PADEN & GRIDLEY, attorneys for appellant, contended that the court below had no power or jurisdiction to compel ap-

pellant to disclose the whereabouts of the child.   Sec. 13, Chap. 40, Rev. Stat. Ill.; Kline v. Kline, 57 Ia. 386; Cooley's Cons. Lim., 6th Ed., 499; Leopold v. People, 140 Ill. 557; Weigley v. People, 51 Ill. App. 51.

The punishment was excessive.   Stuart v. People, 3 Scam. 405; DeBeukalaer v. People, 25 Ill. App. 460.

The facts as shown by the record do not authorize a judgment for contempt or the order committing appellant.   No hearing has ever been had on the merits of the case.   All proceedings as to the child are ancillary to the main case. Corrie v. Corrie, 42 Mich. 509.

The best interests of the child demanded that appellant should not give the information required by the court.   People v. Porter, 23 Ill. App. 196; Chapsky v. Wood, 26 Kan. 650; Clark v. Bayer, 32 Ohio St. 299; Umlauf v. Umlauf, 128 Ill. 378.

SCHUYLER & KREMER, attorneys for appellees.

MR. JUSTICE WATERMAN DELIVERED THE OPINION OF THE COURT.

The question primarily here presented, is as to the jurisdiction of the Superior Court to make the order it did.

Appellant's husband first filed a bill for divorce from her, asking also that the custody of the child taken away and concealed by her twelve years ago, be given to him.   She having answered this bill, filed her cross-bill for divorce, asking therein that the custody of said child be given to her and a sufficient sum for its maintenance, and alimony for herself, and also that he be required to pay her a sufficient sum of money for the support of herself and said child during the pendency of the suit.

The custody of the child was thus, by each of the parties litigant, made a subject-matter for adjudication by the court.

The statute, section 13, of chapter 40, gives to the court power to make "on the application of either party such order concerning the custody and care of the minor children

of the parties during the pendency of the suit as may be deemed expedient and for the benefit of the children."

It is quite evident that without knowledge as to where the child is, with whom and in what manner it is living, the court can not be in a position to exercise with wisdom its discretion as to orders concerning the custody and care of such minor.

When a court acts under this statute, it does what it deems for the benefit of the child or children. For this purpose it is entitled to, and should know, as to the whereabouts and condition of those for whom it is thus to exercise a discretion, a discretion which it is called upon to exercise before it investigates the merits of the controversy as to a divorce. Bishop on Marriage, Divorce and Separation, Vol. 2, Sec. 1182.

The position of appellant, here taken, is that in divorce proceedings, when the court is called upon and feels bound to discharge its duty in this regard, a parent having spirited an infant away and keeping it hid, may refuse to give any information that will enable the court intelligently to discharge its duty, that he or she may constitute himself or herself the judge of what is best for the minor, excluding the court and the other parent from not only all communication with the child, but putting it beyond the power of the court to make any order, judgment or decree concerning the welfare of the infant, which shall be other than a vain and idle proceeding, save as the parent who alone knows where it is, may will.

In the present case appellant has herself appealed to the court for an order compelling the petitioner to pay to her a sufficient sum for the support of the child during the litigation, yet refuses to allow the court to ascertain if there is a living child such as she claims. She has once asserted that she chloroformed and threw this infant into the Niagara river; she now says that such tale was false, that the child is living, well cared for, ignorant of the existence of its father, and will, she fears, be mentally injured should its parentage be made known to it. She declares that she fears that its

father will take it into his custody should he be informed where it is.

If what she asserts in her cross-bill be true, such fear is idle. Courts in divorce proceedings act in respect to the custody of children with a view to their welfare. Wherever this child, if living, may be, whether in New York or Illinois, it can not be presumed that any court, in directing as to the custody of this girl, now twelve years of age, would act otherwise than for her well being.

In an experience of many years we have never known the custody of a female child of tender years to be taken from the mother, unless she was shown to be unfit to be trusted with its care. In this controversy the child has rights that are to be considered. It is entitled to the tender consideration and fostering care of each parent; neither has, as against the child, a right to assume to be the final judge as to its welfare and decide that the other shall neither see or hear from the offspring of both. Its right to appeal for parental care, as well as parental love, extends to father and mother alike.

All that appellant says, as to the home which strangers have given and are providing for this child, may be true; a question presented to the court, in determining what is best for this child may be, is her assertion, in this regard, true? this question she refuses to permit the court to investigate or adjudicate upon; her position is that the court shall not determine what is best for this child; that in this respect she is to be the only judge.

The conduct of appellant was a plain defiance of the authority and power of the court in respect to a matter over which it had full jurisdiction.

It is urged that the order of commitment was unnecessarily severe, being, it is said, an imprisonment for six months. The order is for six months, "unless she shall sooner disclose the whereabouts of the child, Florence, and answer the said interrogatories put to her by the court."

The court could hardly have done less. Its order is affirmed.